walks into the new apartment the next case before the court is Garcia vs. Wilkie, case number 181032, it is an appeal from a decision of the Court of Appeals for Veterans Claims, can you tell me how to pronounce your name? I'm Bill Lesperance. Okay, you want five minutes for rebuttal? All right, you may begin. May it please the Court, Mr. Hockey knows more about the Cook case, 318 Fed Third, than I'm ever going to know, and all I can tell the Court is this may be an unpunished. The veteran in this case served two years back during the Korean War era, got an honorable discharge, got an appropriate amount of rank, never got in any trouble, and if that hadn't happened, we wouldn't be here. You may be right. The person at the management center office in Cleveland that decided to have the doctor rewrite her opinion, couldn't figure out how he got an honorable discharge, how the veteran got an honorable discharge, because if he was schizophrenic at the time, he would have gotten in trouble. He wouldn't have been able to do it, wouldn't have been able to complete his tour, so here we are. And yes, that's one of the things that the Board was looking at, but even if we think that what the, and I don't know about this appeals management center or their authority, but even if we think that what happened, stunk, to use a blatant term, in other words, that they shouldn't have altered, even if we believe that's the case, how do we get around the fact that that information was in the record before, at least before the most recent CUE? Actually, it's only sort of true. Okay, what part is true and what part's not true? The representative for the veteran at the time all that was going on, in 2005, was given the information fairly late in the game, but they did file a brief in 2006. What they filed in the brief was an indicator that the person at the time was a medical examiner in Albuquerque to do a little bit more. What the American Legion didn't know or didn't articulate at that time was all that language that was in the directive from the appeal management center about you couldn't possibly have been right in this medical opinion because this veteran otherwise would have been dishonorably discharged or had article 15 disciplinary action or not completed his term of service or had some problems in the service, which didn't exist. That language didn't start appearing in the record until 2010. The brief of the American Legion was in the record. But you're saying that that exchange from the management center to the doctor was not in the record until 2010? It wasn't, and it started being apparent about two or three years later. There was a record in 2006. There was not a record in 2008. There was a record in 2010, and that's when this document started becoming obvious. So is your argument not so much that you should be allowed to raise a due process claim at any point in time, but you should be allowed to raise a due process claim after an initial CUE decision if there's evidence that the information that's relevant to the due process claim was not produced or not provided to the DOC? That's correct, and it wasn't provided to the veteran initially. When that directive came out in the middle of 2005, it was never sent to the veteran or his representative. They only discovered sometime during the next year when their briefing was done in 2006. But I didn't discover it until a couple of years later because I didn't see it in that original record. But there's a different question between whether you saw it and whether it was in the record. Well, no, it wasn't in the record. The American Legion's brief was in the record, but the part of the language I never saw about that directive that was being sent to the Albuquerque regional office, that language about how the veteran could not possibly have had this discipline. I don't mean to cross-examine you here, but are you saying you didn't see it or it wasn't in the record? It wasn't in the record. Okay. And, you know, Mr. Hockey is not saying anything wrong here because from the look of it, the American Legion at some point finally did see this, but the part that they put in their brief doesn't go to what we've been talking about. Then why didn't you argue that this was a newly discovered evidence case? Because it was. But you never argued that way. Both of these briefs talk about the two exceptions to the finality rule. One of them is newly discovered evidence, but you never made that point. You didn't say it was newly discovered. Well, it just didn't seem to me that it should be necessary. It just seems to me that after Henderson, it just should not be necessary. Do you think that that might still be available to you, a new and material evidence claim, not a clear and unmistakable error? Probably, but we have a situation now where we have a deceased veteran. It's going to be a little hard to get him a medical exam, and I've been trying to argue that for about the last five years. I probably would have abandoned the age of the case in order to get the widows some benefits, but I just can't get Teofilo a new medical exam. He died in 2012. I understand what Henderson says, and that it talks about how this is a very veteran-friendly context, and that's how we should interpret it, but I don't really understand why Henderson is directly relevant to this question. Well, it is, because what you have in that Cook case, you have a situation. I taught school for a brief time, and it kind of reminds me of trying to get all the crayons in the right box, the right colors in the right box. But it's a case management kind of an opinion, and a case management kind of activity that's going on there. It's not the same level of activity as trying to see if we're going to serve the veteran. It's just not. And what I saw when I saw Mr. Hockey's brief was a great job trying to do the right thing, but it's the wrong thing. I mean, it's one thing to do the right job trying to do the right thing, but it's just the wrong thing. And I think that's all we have here. We also have a whole different problem. I mean, there's a whole other side of this issue. I'm still a little bit perplexed that the Veterans Court, after that argument last year, did what they did with this case. Because the real underlying issue from day one in this case, and this is including what the American Legion was seeing back in 2005 and 2006, is this veteran never got a real hearing. I mean, he had a physical hearing where the party showed up and they told their story, but he never had a real adjudication of this case. It never happened. It was always a question of missing records. It was always a question of not having the right evidence before the board because of the missing records. And the American Legion couldn't figure out what to do with it. And one of the reasons why we had some of the procedural issues that occurred back in 2006, 2007, and 2008 was that we were trying to figure out how do you get the evidence in this case before the board. It's one of those cases where all the records got burned in that panel. Right. We've been having all kinds of problems with that fire in 1973. And we've all seen that. But in this particular case, we found a couple of warning reports that were corroborating, which we put into the record. And we tried to build a case that said if you look at the record as a whole, it makes sense. Do you believe that in those missing records that it would have shown that there was some disciplinary issue during his time in service? No, it wouldn't. What it did show was that he went on sick call and it was psychiatric. That's what it would show. What we did show with the warning reports was that he went on sick call. That's as far as we can get with that. But if we actually had medical records, it would show that he went on sick call for psychiatric purposes. I'm never going to get that. It was 1954, and the records have been destroyed. It's not going to happen. OK, you're into your rebuttal. I'll let you say the rest of it. May I please report? I have no reason to question Mr. Lesprince's recollection of what was in the claims file in 2005. But Veterans Court found, based upon a review of the record, including the brief that was filed before the board in 2006, that indeed the AMC remand request was in the claims file. The 2006 American Legion brief quotes from it. If you look at Appendix 131, there's actually in the third paragraph from the bottom an actual quote from the same page containing this language. There's discussion on the following page about finding the report inadequate for the failure to address positive evidence of record. What's the page in the Veterans Court decision? It's page 10, Appendix 11, where the Veterans Court actually talks about this. It's page 10 of the decision, but it's at Appendix 11. And they refer to the fact that it's actually quoted, and it is. The quote that's contained in the brief can be drawn right from the remand, which is at 59. So you would compare the language at Appendix 131 with language at Appendix 59. And particularly the quote, a rationale for this finding, appears right there under the opinion request where the AMC is asking the doctor to please provide a rationale for this finding. So I think all the evidence suggests in the Veterans Court found that it was in the record below. The question here was, or in the briefs, was simply whether or not a third exception finality exists based upon an argument raised to the Veterans Court last year. And our position is no. So you're saying, as a matter of fact, he couldn't have made a newly discovered evidence claim because, or at least the Veterans Court has already made a finding that it wasn't newly discovered evidence. To the extent he would make a new immaterial evidence claim based upon this particular evidence, I would speculate, but suspect that the court would find that that wouldn't be valid because that evidence was already in the record. That doesn't preclude him from making a different new immaterial evidence claim based upon different new immaterial evidence, which is an allowable exception to the finality rule. What do we do with the fact that any evidence of whether he was either disciplined during service or had psychiatric treatment would have been destroyed in the fire? So the discipline part wasn't destroyed. I think, or at least there was no record of it, and there was record that he had been receiving promotion. So as I understand the record, certain service records were not destroyed, but other records to include all the medical records that would have been created during service were destroyed as part of the 73 fire. So the point that the AMC was making was generally when they are confronted with these questions of paranoid schizophrenia, there's some evidence in the record that the individual had behavioral issues during service, which at the time may not have been attributed to a mental condition, but then later can form positive supporting evidence for a finding that the condition arose in service. And here, based upon those records that were available, including his exit and commendations and promotions and good service, the AMC individual, the regional office branch, raised questions about the medical report, which based pretty much clearly on the history reported by the veteran, found that there could be... Is that the norm, that they don't just accept a doctor's conclusions, that they can go back in and criticize those conclusions? So I would respond differently, Your Honor. I would say actually what happened here was a perfect example of how the system should work, because it's also the case, and I think the court would probably look back at some of the veteran's cases it's had over the years and find, that you could have a situation where the regional office faced with this type of medical opinion, which does pretty much attribute the finding to history. The regional office would give it a lower probative value and simply discount it and say this other record evidence is what we would call negative evidence, evidence not supporting the claim, overcomes the probative value of the medical record. Here, what the AMC did was what we think was a nice thing. They looked at it. The reviewing official said, look, when I look at the record evidence, I'm left with no reason to give any probative value to your opinion. Can you change my mind? And sends it back and asks for that individual to... So if that doctor had responded to that request and said, no, no, this particular type of schizophrenia is the kind of thing that wouldn't necessarily show up in good service reports, he might be able to have functioned perfectly well, and so it's not unusual for there to be, in my opinion, onset and in service yet, not have any kind of outward manifestations at the time. Now, had that been the response from the doctor, you now have a very probative opinion that that RO could look at and say, service connection notwithstanding what I would otherwise consider to be negative evidence. It looks like instead the doctor just punted and said, oops, okay. I don't have anything in response. In that case, then, it looked like there was no probative evidence in support of the particular claim at that time. And, again, I think that was a perfectly... Can I ask you this? My understanding, just tell me if I'm wrong, is that premise that on this point, on the AMC interference, the constitutional problem point, the Veterans Court relied on the Hillier interpretation of the regulations and you get one CUE when the subject of the CUE is board error. Is that right? Yes. Okay. So, and I think you have a footnote in your brief that says CUE about RO error is not subject to the you get one shot rule. And that, I guess, led me to ask, at least in my mind... No, no. Where is the AMC in this? The AMC is a creature of the regional office. So why is the error here not... I'm sorry. Why is the error here a board error as opposed to an RO error? Because there was an appeal taken from the RO to the board. And then the board finally decided the issue. And at that point, the RO case is subsumed by the board's decision. And so in order to collaterally attack that decision, you need to attack the final agency level decision that was at issue. And here it was a board decision. So you're right. Although the error may have been an RO level error because of the timely appeal at the time and the issuance of a final board decision, it... The separate rule about CUEs can be multiple for RO errors has bite only for RO errors that didn't at the time get appealed to the board. Correct. You said that clearly in Cushman he presented his due process claim as part of a CUE. But when I read Cushman, we kept talking about his CUE claims and then separately talking about his due process claims. I know that, yes. I read it similarly, Your Honor. What we're trying to do, though, is to grapple with what could Cushman mean in a world where CUC already existed. When this court in sitting in full says there are two exceptions to finality, and in arguably dicta, addresses even a potential due process allegation. Although I will say, just as an aside, the allegation in Hare and in CUC, and frankly in this case, are all of a set. They're basically like assistance types arguments. Something went askew during the development phase of the case. It's not so much like in Cushman where something happened and Mr. Cushman didn't know about it. Here, we have a complaint about the quality of the assistance that was provided or not provided, as the case may be, by the VA. And that was a known thing that could have been challenged. Am I correct that CUC was operating under regulations or considering regulations that have since been amended? CUC? Yes. The only post-CUC regulation, first of all, I think CUC was really focused on the statutes, 5108 for new and current evidence, 5109A and 7111 for CUE. The only, I think, development, regulation-wise, substantive CUE would be some changes to 3.156, which is the regulation that implements 5108. But nothing that would have affected this Court's decision, which was that Congress, in issuing 5108 and 5109A and 7111, authorized these two exceptions. And the Court's aware, when I say 5109A and 7111, those are the two separate but same CUE statutes identifying CUE in either a regional office decision or a board decision. Are you comfortable that the board has the authority to even consider a constitutional claim? Yeah, well, the board has a statute which specifically deals with process arguments. So, I mean, a regulation which deals with process arguments. We're not uncomfortable with the board entertaining the idea that there was some sort of denial of process. They do that all the time. Part of the reality, though, is Matthew's due process considerations generally are a backstop to something provided by statute or regulation. And our position, historically, and continues to be, that the scheme developed by Congress on the VA to provide veterans' assistance goes well beyond anything Matthew's would require. Outside those weird cases like you had with Cushman, your process has built in gates, or gatekeepers even, that allow someone to challenge any concerns. Like in this case, had there been concern at the time, and it looks like the American Legion was aware of this AMC action but had a different view of the problem. They weren't so much concerned with the fact that the AMC asked for reconsideration or an addendum to the medical opinion. Their concern at the time was that given that, and given that the doctor had changed her mind, then the duty to assist would have required the VA to go on and try to find some other doctor report that could have addressed this question. That's the gist of the briefing that they presented to the board. But the long and short answer is, no, we don't have a problem with the board. The veterans' court statute specifically says that it can look at whether the secretary complies with the Constitution in his actions. There's that issue we discussed in another case about facial challenges, but that's not an issue here. Of course, this court has jurisdiction to address constitutional questions to the extent they're presented in a decision on appeal from the veterans' court. Do we have jurisdiction, I don't know if it matters here, to review factual findings about waiver of constitutional arguments? I think the statute says that this court's normal prohibition against factual review is accepted when it comes to constitutional questions. Does that exception reach not just facts that go into the merits of the constitutional questions, but also facts that go into whether there has been a waiver of it and therefore you don't even get to the merits? I'm not prepared at this moment to concede that point. But I recognize the question and normally I think that the initial answer would be probably, but I reserve the right to consider that further at the appropriate time. Okay. No questions. Thank you. Thank you. Thank you. The American Legion talked about... The reporter was asked to obtain a rationale for the February 2005 finding and to obtain a specific declaration of claims file review, that's all. There was never any mention made by the American Legion about the pejorative language in the request. And what's really interesting about that... But isn't Mr. Hockney right that while your recollection of what's in the file we can accept coming from you as an officer of the court, but we are bound by the factual determination that the Veterans Court made that it actually was in the file? But the Veterans Court doesn't specify at what point the request was in the file. I don't believe. In any event, they may be wrong. It's a small distinction, but Mr. Hockney is not incorrect that the brief that was done by the American Legion talks about this request. But the request itself doesn't seem to be evident to the veteran or to the veterans representative as far as I was concerned until a couple of years later. That's where it shows up. And you can also see... I'm going to respond to something that Judge Tarano said because it's really interesting. The end of that brief that the American Legion filed goes for two pages into this whole issue about why is this Appeals Management Center dealing with this thing? The Appeals Management Center has different offices. There's one right around the corner here. And there's this one in Cleveland that did this particular case 13 years ago, whatever it is. And that is an alternative regional office. It's not the board, and it's not the regional office. The agency of original jurisdiction is Albuquerque. And the American Legion, and I did too, I was very unhappy that this whole thing was being done by an alternative regional office that we have no connection with. At the time, and I still am, we still have this issue. Are you saying it was being handled out of the regional office in Cleveland or simply that the AMC that reports to the regional office in Albuquerque was working on it? It doesn't work that way. The AMC does not report to the regional office in Albuquerque. It doesn't work like that. It's its own entity, and it pretends to be the same thing as the agency of original jurisdiction. It's not, and that's what that brief, the last two pages, is all about. They were issuing a statement of the case about this whole issue, and then they were rendering an opinion about this whole issue as if they were the Albuquerque regional office agency of original jurisdiction, AOJ. And they're not. And there's no connection between the veteran and this thing in Cleveland at all. And it's not really an arm of the board. The board sends the paperwork to these AMC offices to have them do the secondary work, but they didn't send it back to Albuquerque. And you're right. I mean, this is exactly what was going on there. And we originally requested that this record be improved and expanded and have the thing actually decided correctly in 2007 at the regional office level. That's why it was done that way, because all of these records were missing, and we wanted the people to actually do the work that could do it. Okay. Thank you. Any last words? I do. For one second, right? You know, as we all know, the government's interest in the veterans' claim shouldn't be to win. It should be to see that justice is done. And Simon Sinek, in his book about five years ago, Start With Why, says, if we were starting with the wrong questions, if we don't understand the cause, then even the right answers will steer us wrong. Thank you. Thank you. We thank both councils.